UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 19-cr-163-01 |
| VERSUS | : | JUDGE JAMES D. CAIN, JR. |
| NEGUEL ALFONSO MORRIS | : | MAGISTRATE JUDGE KAY |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Suppress filed by defendant Neguel Alfonso Morris. Doc. 24. Through this motion he seeks to suppress physical evidence and statements resulting from a vehicle stop. An evidentiary hearing was held before the undersigned on November 19, 2019. Doc. 36. The government elicited the testimony of Deputy Jason Thorpe, Deputy Joshua Fontenot, Donald Lindenman, Sr. Corporal Glenn Mott and introduced video footage from the deputies' body cameras. For the reasons stated below, we **RECOMMEND** the Motion to Suppress [doc. 24] be **DENIED**.

**I.**
**BACKGROUND**

Morris is charged in this court with possession with intent to distribute heroin, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i). Doc. 1. The charge was made by indictment which alleges that, on or about August 24, 2018, Morris possessed one kilogram or more of a mixture and substance containing a detectable amount of heroin. *Id.* On August 6, 2019, Morris filed the instant Motion to Suppress challenging the validity of both the stop of his vehicle and its

subsequent search. Doc. 24. The Government opposes the motion arguing that stop and search were part of a valid consensual encounter. Doc. 27.

## II.
## LAW & ANALYSIS

### A. Initial Stop

Morris argues that evidence recovered by police on August 24, 2018 should be suppressed because it was obtained from an unconstitutional stop of his vehicle. Doc. 24, att. 1, p. 4. He argues the stop was unconstitutional because police did not have reasonable articulable suspicion that criminal activity was afoot. *Id.* The Government argues that the stop was consensual and therefore reasonable suspicion was not necessary. Doc. 27, p. 3.

Generally, "the exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.'" *United States v. Singh,* 261 F.3d 530, 535 (5th Cir.2001). However, unlike an investigatory stop, which is considered a seizure under the Fourth Amendment [*see United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)], "consensual encounters do not implicate Fourth Amendment concerns." *U.S. v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (citing *United States v. Sanchez-Pena*, 336 F.3d 431, 442-43 (5th Cir. 2003)). Accordingly, if a stop is consensual, "the police can initiate contact with a person without having an objective level of suspicion." *U.S. v. Williams*, 365 F.3d 399, 404 (5th Cir. 2004) (citing *U.S. v. Drayton*, 122 S.Ct. 2105, 2110 (2002)).

To determine whether an initial stop was consensual, courts consider whether a person's decision to stop "was in fact voluntary or was the product of duress or coercion, express or implied, [which] is to be determined by the totality of the circumstances." *U.S. v. Mendenhall*, 100 S.Ct. 1870, 1879 (1980) (citations omitted). In conducting this inquiry, it is important to consider whether any "blocking of exits" occurred. *See Drayton*, 122 S.Ct. at 2112. A consensual

interrogation may follow the end of a valid traffic stop [*see, e.g., Brigham*, 382 F.3d.] or it may occur when police initiate contact with a person [*see, e.g., Williams*, 365 F.3d.] so long as is in both circumstances, "a reasonable person would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick*, 111 S.Ct. 2382, 2386 (1991) (quoting *California v. Hodari D.*, 111 S.Ct. 1547, 1552 (1991)). Courts have repeatedly found encounters to be consensual when police approach a vehicle on foot, so long as a vehicle was not physically blocked from egress. *See U.S. v. Encarnacion-Galvez*, 964 F.2d 402, 410 (5th Cir. 1992); *See also United States v. Carr*, 674 F.3d 570, 573 (6th Cir. 2012). As noted by the Supreme Court, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado*, 104 S.Ct. 1758, 1762 (1984).

Evidence adduced from the hearing revealed that on August 24, 2018, beginning at approximately 1:20 a.m., Thorpe, Fontenot, Lindenman, and Mott—all employed by the Calcasieu Parish Sherriff's Office as deputies on the night in question—conducted a foot patrol of the Wagin Cajun truck stop parking lot located in Sulphur, Louisiana. While conducting this foot patrol, Thorpe and Fontenot noticed a gray Ford sedan with its engine running parked in the back of the lot near some tractor trailers. This vehicle was occupied by the defendant who began to drive away as the two deputies approached the vehicle. Thorpe proceeded to flag down defendant's vehicle. Although Thorpe and Fontenot did not physically blocked Morris's egress, Morris stopped his vehicle and began speaking to the deputies.

As both deputies testified that neither of them physically blocked Morris's vehicle, we conclude that the initial stop was consensual and that a reasonable person would have felt free to continue driving. This encounter was brief, and nothing about the tone of the deputies or questions

asked would have made defendant feel he was not free to leave. Accordingly, as the deputies did not need a reasonable articulable suspicion to speak to defendant, the stop was valid.

### B. Search

After stopping his vehicle and speaking with police defendant eventually consented to a search of his vehicle. Defendant challenges the validity of the search of his vehicle arguing that his consent was not freely given. Doc. 24, att. 1, pp. 7-8. The Government maintains that Morris's encounter with the police was voluntary and that he freely consented to the search. Doc. 27, pp. 6-8

When a warrantless search is conducted pursuant to consent, the government must prove by a preponderance of the evidence that consent was freely and voluntarily given. *US v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997) (citing *US v. Jenkins,* 46 F.3d 447, 451 (5th Cir. 1995)). Whether consent was voluntary is a question of fact to be determined from the totality of the circumstances. *US v. Santiago*, 410 F.3d 193, 199 (5th Cir. 2005) (*US v. Solis*, 229 F.3d 420, 436 (5th Cir. 2002)). "Th[e] court considers six factors in evaluating the voluntariness of consent to search, all of which are relevant, but no one of which is dispositive or controlling." *Id.* (citing *Solis*, 229 F.3d at 436). The six factors considered are:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*US v. Galberth*, 846 F.2d 983, 987 (5th Cir. 1988) (citations omitted). In consideration of the fourth factor, the defendant's awareness of the right to refuse consent, "[t]he Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." *Drayton*, 122 S.Ct. at 2113

(citations omitted). "Instead, the Court has repeated that the totality of the circumstances must control, without giving extra weight to the absence of this type of warning." *Id.*

Morris's consent to the search of his vehicle is clearly depicted in the body camera footage provided to this court. The deputies use a cordial tone when speaking to defendant. After asking Morris to step out of the vehicle, the deputy repeatedly asks defendant if his vehicle can be searched, indicating to defendant "the more you cooperate, the faster we'll let you go about your way." Defendant never definitively responds that the deputies may *not* search his vehicle, however before consenting to the search, he: (1) offers to let the deputies search his person, (2) indicates that the vehicle is a rental, (3) asks the deputies if they have a warrant, and (4) insists that there is nothing in the vehicle. *Id.* It was revealed at the hearing that Morris had recently smoked crack before encountering the police.

We consider the deputies actions under the factors put forth in *Galberth*. We have already determined that defendant's encounter with the police was voluntary. In evaluating whether any coercive police procedures were employed in this case, we note that, when asked by the deputy if his vehicle could be searched, Morris never said "no." Rather appears Morris considered the deputy's request, and then decided to consent to the search. As Morris repeatedly avoided the deputy's question when asked if his vehicle could be searched, we do not find it particularly coercive that the deputy kept asking. Defendant was cooperative and his reference to a warrant suggests some limited awareness of his right to refuse consent. Although it was later revealed that Morris had recently smoked crack, in the video Morris does not appear to be particularly intoxicated and he appears to be of average intelligence. As the deputies recover a crack pipe almost instantaneously after Morris consented to the search, the final factor of the analysis—the defendant's belief that no incriminating evidence will be found—weighs against a determination

that Morris voluntarily consented to the search. Nevertheless, taking the evidence in totality, we find that consent was freely and voluntarily given in this case.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Suppress [doc. 24] be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 9th day of December, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE